(53 South. 367.)

No. 17,667.

WINSTON BROS. & CO. et al. v. LOUISIANA CENT. CONST. CO. et al.

(June 25, 1910. Rehearing Denied Oct. 17, 1910.)

*(Syllabus by Editorial Staff.)*

1. CONTRACTS (§ 322*)—BUILDING CONTRACTS —EXTENSION OF TIME—EVIDENCE.

Evidence *held* to show that the president of a construction company, for whom plaintiffs were doing railroad construction work, in a conversation with a member of plaintiff firm, informed him that the company would not hold plaintiffs responsible for failure to complete part of the work within the contract time, and that plaintiffs settled with subcontractors, believing that plaintiffs were fully relieved from forfeiture for failure to complete the work in time.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 322.*]

2. CONTRACTS (§ 242*)—BUILDING CONTRACTS —EXTENSION OF TIME—WAIVER OF PROVISION IN CONTRACT.

Where a construction company granted contractors an extension of time in which to do work, the company is estopped from contending that the contractors had no right to the extension, because application was not made until after expiration of the time set by the contract for completion of the work, as provided in the contract.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1127; Dec. Dig. § 242.*]

3. PRINCIPAL AND AGENT (§ 28*)—EXISTENCE OF RELATION.

Though a chief engineer of a construction company had resigned, yet where he was afterwards permitted to act as such, receiving payment only for such time as he was serving, he will be deemed to have held the position as long as he was held out as such by the company.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 50; Dec. Dig. § 28.*]

4. CONTRACTS (§ 232*)—BUILDING CONTRACTS —CLAIMS FOR EXTRA WORK.

A railroad construction contract permitted the construction company to make changes of grade, and provided for extra claims of contractors in such cases, if the change was of such extent as to entail a loss on the contractor's part, upon such a claim being made in writing to the construction company before commencing work on the changed grade. *Held* that, where contractors made no written demand for such extra work, either before the work began or directly in any of their monthly estimates of work, though they must have known of such extra expense at the time, they were estopped from afterwards making such a claim.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1071–1097; Dec. Dig. § 232.*]

5. CONTRACTS (§ 150*)—CONSTRUCTION — CONTRACTS IN WRITING.

Where a contract is in writing, the writing must be held to govern the construction thereof, unless error therein is alleged and clearly shown.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 150.*]

6. DAMAGES (§ 40*)—BUILDING CONTRACTS—BREACH.

Where a construction company, after granting contractors an extension of time, sublet part of the work to another without the contractors' consent before expiration of the extension, the contractors could not recover for loss of profit on such work, where it did not appear that they could have done the work within the extension, nor that they could have sublet it for less than their contract price.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 72–88; Dec. Dig. § 40.*]

7. DAMAGES (§ 122*)—BUILDING CONTRACTS—DELAY.

A construction company cannot recover from contractors for damages to a railroad roadbed from rain, and for loss of tax exemption on a certain portion of the road, because of the contractors' delay in finishing it, where the contract time for completion had been extended, and the work was completed and accepted within such extension.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 122.*]

Appeal from First Judicial District Court, Parish of Caddo; Andrew J. Murff, Judge.

Action by Winston Bros. & Co. and others against the Louisiana Central Construction Company and others. Judgment for plaintiffs and defendants appeal. Affirmed.

Wise, Randolph & Rendall, for appellants. Hall & Monroe, for appellees.

NICHOLLS, J. Plaintiffs in their petition alleged that the Louisiana Central Construction Company (thereafter designated as the "Construction Company") and William Edenborn, as guarantor of the said Construction Company, were indebted to them in the sum of $82,584.67, for this, to wit:

(1) Contract, Specifications, Proposition, Profiles, and Estimates.

That in the month of February or March, 1903, the said Construction Company negotiated with and solicited proposals from various railroad construction contractors to construct and finish the grading of a single roadbed from near the north corporate limits of the city of Baton Rouge, La., to the Mississippi river, at or near Angola (also in the state of Louisiana), a distance of about 50 miles.

That, in order to ascertain the prices at which contractors were willing to do said work, the said Construction Company caused to be printed and distributed to the contractors, with whom it negotiated for the doing of said work, a printed form of contract and specifications, to which was attached a printed form of "Proposition" to be signed by the contractor, which proposition stated in detail the several kinds of work to be done, and contained blanks to be filled in by the contractor, in which he stated the unit prices at which he would undertake to do said contract work. That there were also submitted by said Construction Company, to the contractors, maps, profiles, and estimates showing the amount and character of the work to be done, so as to enable the proposing contractors, with practically full and exact information as to the amount and character of the work to be done, to determine at what prices they would be willing to contract to do each kind of work and within what time they would be willing to complete the whole. That said maps, profiles, and estimates are assumed to represent the work to be done with practical and close accuracy, and that bids of proposing contractors are based on this assumption. Petitioners further show that the form and stipulation of the said contract and specifications and of said proposition are chosen and expressed in printed forms and language selected by said Construction Company (except a few blanks filled in in writing), and that the maps, profiles, and estimates were made by the Construction Company and constituted represent-

atives by it, on the faith of which contractors were invited to rely and act, and on which petitioners did rely and act.

Petitioners further show that they submitted a bid based on said forms and representations, and that their said bid was accepted, and the contract between your petitioners and said Construction Company was formally signed and entered into on or about March 24, 1903.

Petitioners annex to this petition as part thereof a duplicate original of said contract, specifications, and proposition. The said maps, profiles, and estimates were retained by the Construction Company, and are not in the possession of your petitioners.

## (2) Time for Completion Clause—Right to Extension.

Your petitioners further show that it was provided in said contract that the work undertaken by your petitioners should be completed by or before June 1, 1904; but it was expressly provided by the eleventh paragraph of the said contract that, if your petitioners were hindered or delayed by any cause, such hindrance or delay might entitle your petitioners to an extension of time for the completion of the work sufficient to compensate for the detention, and that the additional time should be determined by the chief engineer of the said defendant. And your petitioners show that they are in no event liable for delays in the completion of the said work that were caused by the negligence, fault, or act of the said defendant itself, or by its failure to discharge its own obligations under the contract.

## (3) Monthly Estimates—Retention of 10 Per Cent.

Your petitioners further show that it was provided in said contract that the work done each month by your petitioners should be measured up and the amount thereof calculated, and that petitioners should then be paid by the 25th of the following month on the certificate of the chief engineer of the defendant, showing the amount due petitioners for the work done the previous month, but that the defendant should retain 10 per cent. of the amount so shown to be due your petitioners, until the final completion of the work. The said contracts contain a clause reading:

"Payments shall be made on or before the twentieth (20) 25th (written in pencil) day of each month, on the certificate of the chief engineer for work done to the end of the previous month, according to the estimate of such work made by the said engineer, deducting 10 per cent. from the value of such work as an agreed compensation for damages, to be forever retained by the second party in case of failure of the first party to complete the whole amount of work embraced in this contract, according to the several stipulations of this agreement. These liquidated damages shall be absolute, and not subject to any deductions on account of the partial performance of contract."

That defendant pretends that said clause is one in fact for liquidated damages, though it is manifest, both from the terms of said ninth clause and from other provisions in the contract, that said clause provides for a penalty, but not for "liquidated damages," as the nature of the stipulation is determined by the substance of the thing stipulated, and not by the words used or name given to the stipulation; and petitioners deny that there is any provisions for liquidated damages anywhere in said contract.

## (4) Rights of Way.

Petitioners further show that the said defendant was bound to procure and deliver over to petitioners the right of way over all the lands over which the said line of railroad was to be built, so that your petitioners should be able to at once enter on said lands and to commence the construction of the said work.

## (5) Marking and Staking of Line.

And your petitioners further show that they were not able to begin the work under

the said contract until the engineers of said defendant had fixed and determined by proper marks and stakes the exact lines on which the said work was to be done, so that your petitioners might know the proper width and slope of the several cuts and fillings which your petitioners were required to build under said contract, to give your petitioners said lines, properly marked and staked, as soon as said contract was entered into.

### (6) Contract Covered from Baton Rouge to Mississippi River.

Your petitioners further show that under said contract they were entitled to build the entire line of said railroad from the north corporate limits of the city of Baton Rouge to the Mississippi river at or near Angola, for said entire distance of 50 miles, and that said defendant had no right to exclude your petitioners from any part of said line, or to deprive petitioners of the benefits of any sort that would have resulted to your petitioners in any way if their right to the construction of such part had been fully recognized.

### (7) Completion and Delivery of Work.

Your petitioners further show that before December 1, 1904, they completed and delivered the work required by said contract, except that part over the Angola State Farm, of the right to construct which they were wrongfully deprived by defendant; and petitioners delivered the same to the defendant, and that the said defendant inspected and accepted said work and took possession thereof, and does not pretend that any part of said work is improperly or insufficiently constructed, or that said work, as done, does not in any respect conform to the requirements of the said contract.

### (8) Retention of the 10 Per Cent. by Defendant.

But defendant refuses to pay over to your petitioners the 10 per cent. retained on the monthly estimates as hereinabove stated, pretending that it is entitled to retain the same permanently as "liquidated damages" under the said contract, on the ground that your petitioners did not complete the said work on or before June 1, 1904; and defendant further refuses to allow and to pay to your petitioners their claims as hereinafter set forth.

### (9) Retention of the 10 Per Cent. Wrongful.

Your petitioners further show that said final estimate shows and admits that the work done by your petitioners amounted to $612,238.51, and shows that the defendant has retained from said amount the sum of $61,223.85, pretending that it is entitled to retain the same as "liquidated damages" as per contract.

Now your petitioners show that the only ground on which the defendant has ever claimed to be entitled to retain said 10 per cent. as "liquidated damages" is that fact that petitioners did not complete the said work by June 1, 1904; and your petitioners show that defendant is not entitled to retain said 10 per cent. for such noncompletion by June 1, 1904, for the following reasons, to wit:

(a) That the provisions in said contract relative to the retention of the said 10 per cent. on the monthly estimates by the defendant do not constitute in fact any provision for liquidated damages, but partly stipulate a penalty in terms, but not legally exigible in its entirety, not only for delay in completion, but also for any nonperformance whatever by petitioners, and partly provide a fund to insure completion of contract if taken over by defendant; and your petitioners show that, as they have completed and delivered the entire work required by said contract as far as they were permitted to do so by the defendant, and as the defendant accepted and took possession of the said work as properly done, the defendant is now without right to retain the said 10 per cent.

and is bound to pay the same over to your petitioners; that said defendant cannot demand both the performance stipulated by contract and the penalty; and that defendant has elected to accept the performance required by said contract, and is therefore without right to claim the penalty.

(b) Your petitioners further show that the delay in not completing the work by June 1, 1904, was in any event wholly due to the acts, defaults, and misrepresentations of the defendant, and the defendant can therefore in no case claim the right to retain permanently the said 10 per cent. for delay in completing the said work when the defendant itself is responsible for the causes which occasion said delay; said causes being as follows:

(1) That the defendant was bound, as above stated, to stake off and mark off, in the usual way, the lines on which said work was to be done immediately after said contract was entered into on March 24, 1903. Your petitioners further show that the largest cut on the line of work to be done under said contract, known as the "Como cut," was not marked and staked off until July 21, 1903, although your petitioners repeatedly called on the defendant to mark the lines of said cut; that your petitioners were unable to begin work on said cut until the lines thereof had been fixed and marked by the engineers of the defendant; and that defendant delayed petitioners more than 60 days in giving the lines of the said cut.

(2) Your petitioners further show that the said Como cut is probably the largest cut in railroad construction in the South, and is one of the largest in the United States; that the time required for the completion of this cut was an important factor in estimating the time within which the entire work could be completed, and your petitioners were guided in making their estimate as to the time within which said work could be completed by the profiles and estimates as exhibited to them when your petitioners entered into said contract of March 24, 1903. Your petitioners further show that not only did the defendant delay until July 21st before marking out and staking off the lines for the said cut, but, when the said lines were finally marked out and staked off by the defendant, the size of the cut was immensely increased, so as to nearly double the amount of work and excavation required to be done; and your petitioners show that it is almost impossible to state with any approach to accuracy what additional time was required by petitioners in order to complete the said enlarged cut, and petitioners aver that the enlargement of the cut necessitated an extension of at least 6 months to complete the said work alone; and petitioners had been delayed as above stated at least 60 days in the commencement of any work on the said cut, by reason of the failure of the defendant to have the lines on said cut marked out and staked off.

(3) Your petitioners further show that a part of the work covered by the contract of your petitioners, and which your petitioners were entitled to do and expected to do, was that part of the said railroad which lay across the State Farm of the state of Louisiana, at or near Angola, for a distance of about four miles. Your petitioners further show that the defendant is bound by its contract of March 24, 1903, to procure for your petitioners the right of way across all the lands over which the railroad was to be built by your petitioners, and was therefore bound to procure the right of way across the said Angola State Farm. Your petitioners show that the said defendant was, or pretended to be, unable to procure the right of way across the said Angola State Farm before June, 1904, and petitioners were unable to begin work on said Angola State Farm before that time, and that when the said defendant did procure the right of way across the said State Farm it then arbitra-

rily and wrongfully deprived petitioners of the right to build the road across the said farm, and awarded the doing of that portion of the work, which lay across the said farm, for a distance of about four miles, to other persons.

Your petitioners show that the contract time for the completion of the entire work had elapsed, or nearly elapsed, before defendant procured the right of way across the said State Farm, and that it would have been impossible after procuring the right of way across the said farm to complete the work across the said farm in less than six months; and petitioners show that they are entitled to a delay of at least six months from June, 1904, by reason of the failure of the defendant to procure the right of way across the said Angola State Farm before June 1, 1904.

(4) Your petitioner further shows that it is stipulated in the eleventh paragraph of the said contract that, in case of hindrances or delays occurring, additional time may be allowed by the chief engineer of the said Construction Company; and your petitioners further show that W. E. Hawley, chief engineer of the said Construction Company did by letter dated November 3, 1904, in response to a letter of your petitioners of October 24, 1904, declare that your petitioners were entitled to an extension until December 1, 1904, and the said chief engineer was authorized by the thirteenth clause of the said contract to allow the said claim for delay. Petitioners further show that said work was completed, inspected, and accepted before December 1, 1904; and your petitioners show that the allowance of time by the said chief engineer of the said Construction Company is conclusive that petitioners were and are entitled to the additional time allowed by the said engineer, and as a matter of fact your petitioners show that for the reasons hereinabove stated they were entitled to much more time than that allowed by the chief engineer.

(10) Petitioners further show that when they entered into the said contract of March 24, 1903, the profiles submitted to petitioners showed an excavation in section 20 of 139,011 cubic yards, and showed more than enough embankment in sections 17, 18, and 19, adjacent to the said section 20, to receive the whole of said 139,011 cubic yards of excavation; that under the terms of the said contract for earth taken from an excavation and used in an embankment, as shown by said profiles, petitioners were to be paid 17½ cents per cubic yard for the excavation of such earth, and 17½ cents for placing the same earth in the embankment, thus entitling petitioners to 35 cents for each cubic yard taken out of the excavation and placed in the embankment; but that petitioners were entitled, under said contract, to only 17½ cents per cubic yard for earth taken for the purpose of and placed in embankments from places other than cuts. Petitioners show that after the said work had begun the engineers reduced the cut from 139,011 cubic yards to 76,950 cubic yards, but required the same amount for the embankments, but that petitioners' expenses were in no way reduced, so that petitioners lost $10,860.67 as the result of the said reduction of excavation by the defendant by reason of the facts above stated, as petitioners based their prices on the assumption that they would receive the said sum under the contract and the profiles and estimates.

(11) Petitioners further show that the work across the said Angola State Farm, of the right to which plaintiffs were wrongfully deprived by the defendant, involved the handling of about 350,000 cubic yards, on which petitioners would have made a net profit of 3 cents per yard, or $10,500 in all; that the defendant was without right to deprive your petitioners of the right to do this work, and

that they are bound to pay to your petitioners the amount of net profit which your petitioners would have made on the said work across the said Angola State Farm, which was easier and more profitable than the greater part of the work. Petitioners aver that they have suffered damage in the amount of $10,500 by reason of the defendant's violation of its obligation to permit petitioners to construct said portion of the work covered by the said contract.

In view of the premises, petitioners pray that the Louisiana Central Construction Company, through its proper officer, and the said William Edenborn, be duly cited to appear and answer this petition, and that after due proceedings and delays there be judgment in favor of your petitioners, condemning the said Louisiana Central Construction Company and the said Wm. Edenborn in solido, to pay your petitioners:

First. The sum of $61,223.85, with 5 per cent. interest per annum thereon from December 1, 1904, until paid.

Second. The sum of $10,860.57, with 5 per cent. interest per annum thereon from judicial demand until paid.

And for all general and equitable relief and for costs.

The Construction Company answered. After pleading a general denial, it admitted signing a contract with the plaintiff on the 25th day of March, 1903, as per same hereto attached and made part hereof, for the construction of some 50 miles of roadbed from near the north corporate limits of Baton Rouge, La., to the Mississippi river, at or near Angola. Defendant admits the detention by it of the 10 per cent. from the price of the work (done by plaintiffs), and is retaining same, and has a right to detain same, as agreed liquidated damages under the terms of said contract, in case of failure of said plaintiffs to complete the work according to the stipulations of the contract. Defendant

avers that by the very terms of the said contract it was expressly stipulated that time was the essence of the said contract. Defendant avers that the said plaintiffs obligated themselves by said contract to complete the work between Baton Rouge, La., and Thompson's creek, on or before the 1st day of September, 1903 (but did not complete same until March, 1904), and to complete the balance of the work in its entirety on or before the 1st day of June, 1904. The defendant avers that said plaintiffs, through their own fault, lack of diligence, and neglect, failed in both instances to complete the work to Thompson's creek from Baton Rouge in the time named, and never did complete the balance of the work from Thompson's creek to the Mississippi river, but only completed said section north of Thompson's creek, to and through section "3A" on or about December 1, 1904, some six months after the time for doing the whole work under the contract had expired; and defendant avers that this delay was through no fault of defendant, but through the negligence and fault of said plaintiffs, and that the amount of $61,223.85 is justly held by the defendant as liquidated damages under the express terms of the contract. Defendant denies that plaintiffs were entitled to any extension of time within which to complete their contract, and if they were so entitled (which is denied) that they never made application for the said extensions under the terms of the said contract; that no extensions were granted the said plaintiffs; that the said Hawley assuming to grant the said pretended extension, not being at the time the chief engineer of your respondent in charge of the work, and, if it should be held that the said Hawley was the chief engineer in charge of the work, that the alleged extension was granted contrary to the contract, contrary to its stipulations; that the said plaintiffs, well knowing that they were not entitled to said alleged extension

by the alleged engineer, recognizing that they could not complete the work in time under the contract, made overtures and requests to your respondent for further time, which was denied by defendant. Responding to the item of $10,860.67 growing out of alleged changes in excavations in section 20, defendant denies plaintiffs suffered any damage, but admits that there was a change in excavation, reducing the cut (or yardage), but avers that the amount of fill in the embankment in sections adjacent named in petition was reduced, and further avers that defendant had the right to make these changes under the contract (see clause 5, which also provides that no claim for any increase in price shall be allowed unless made in writing—which was not done—before the work on the altered portion shall have commenced); and that, besides, these changes were made at the instance and request of plaintiffs, plaintiffs in point of fact accepting current settlement therefor (i. e., 90 per cent. of the amount of work done then) without protest and without any claim for allowance resulting from said alleged claim, and they are estopped under the contract and by their own acts aforesaid from making any such claim.

Defendant further denies that it delayed petitioners in their work on the Como cut; that said cut was marked out and staked off by defendant more than 60 days before plaintiffs actually began work there; and that the delay of the work at this point was through no fault of defendant, but through plaintiffs' own fault and negligence.

Defendant avers that plaintiffs through their own fault so delayed the work under the contract, in point of fact not completing the same up to the Angola (Farm) Plantation until six months had expired from the agreed time of completing the work. Your respondent realizing that the plaintiffs would not or could not, through their fault, complete the work in its entirety within the period fixed, on account of the uncertainty and inability of plaintiffs (and inability and uncertainty confirmed by the event), your respondent undertook the said work across the Angola State Farm, and had the same partially completed before the said plaintiffs had finished (six months later than the stipulated time) the balance of the work between said farm and Baton Rouge, and before said plaintiffs had reached the said Angola Farm. Respondent avers that as aforesaid, time was the essence of said work contracted for by plaintiffs, and the plaintiffs judicially admit their failure to complete said work within the time stipulated, even as far as Angola State Farm; and the defendant avers this failure was through plaintiffs' fault, and not through any fault of defendant.

In view of the premises, defendant prays plaintiffs' demands be dismissed at their costs and for general relief. Defendant avers that, if any part of the $61,223.85 should be decreed to be returned, $12,490.96 thereof was clearly forfeited for the failure of plaintiffs to complete the work to Thompson's creek in time, and that this should be deducted, and it prays for this reduction in the event the court should decide and decree any return of said $61,223.85, or any part thereof.

Defendant avers that in the alternative, if the court should decree for any reason the payment of the $61,223.85, or any part thereof, or any other item sued on herein that by failure of the said plaintiffs in the sum of $40,000 expended by it in order to preserve and restore said constructions, embankments, cuts, etc., which expense would not have been necessary in case plaintiffs had fulfilled said contract within the time as stipulated, and that it has been damaged in the sum of $6,600 damages, loss of taxes exemption on 5½ miles of the railroad which your respondent would have enjoyed but for the failure and fault of plaintiffs.

In view of the premises, respondent prays

in the alternative, in the event the court decrees judgment against it as above, that your respondent have judgment in reconvention against said plaintiffs in a sum of $46,600 for all costs, and general relief.

Plaintiffs filed a supplemental and amended petition, in which they averred: First. That, in addition to the causes of delay stated in the original petition herein, there were the following causes of delay in the completion of the said work, to wit:

(a) A portion of the line of the roadbed which plaintiffs agreed to construct was over the Ackland plantation which adjoins the said Angola State Farm; that the defendant was bound, as stated in the original petition, to procure and deliver to the plaintiffs herein the right of way over the said Ackland plantation, immediately after the signing of the contract for the construction of the work; that the defendant, however, failed to procure the right of way over the said Ackland plantation until November, 1903, about eight months after the contract was signed, and plaintiffs were seriously delayed in their work by the failure of the defendant to procure and deliver to the plaintiffs the right of way over said plantation, as the plaintiffs were unable to go on said plantation and construct the roadbed over said plantation until the right of way over the said plantation had been procured by the defendant herein.

Plaintiffs further show that, if the right of way had been promptly procured by defendant over the said Ackland plantation, they could have built the roadbed over the said Ackland plantation during the dry season of the year; but that defendant neglected to procure the right of way over the said Ackland plantation until the late fall or early winter of the year 1903, during the rainy season; and plaintiffs were thereby subjected to heavy additional expenses and delays in the completion of the said work, in pumping out their borrow pits and otherwise.

(b) Plaintiffs further show that all of your plaintiffs were strangers in the state of Louisiana, and had never done any railroad construction work in the alluvial portions of Louisiana before, and were not acquainted with the seasons of the rise and fall of the Mississippi river.

Plaintiffs show that at the time said contract was signed, on March 24, 1903, a part of the line over which the said roadbed was to be constructed was covered with water from the overflow of the Mississippi river; and plaintiffs inquired of the general manager and of the chief engineer of the defendant company how long said overflow would remain on the said lands, and they were informed by the said general manager and the said chief engineer of the defendant company that the water would recede so that the work could begin on said line by May 1, 1903; and plaintiffs entered into said contract of March 24, 1903, on the faith of said representation of the defendant as to the time when the waters would fall as stated by the said defendant company's general manager and chief engineer.

Plaintiffs show that as a matter of fact the overflow of the Mississippi river covered the bottoms over which ran the line and roadbed which they had undertaken by said contract to build, in the neighborhood of Thompson's creek and Bayou Sara, until about September, 1903; and, owing to said overflow, the plaintiffs were not able to begin clearing the right of way, or doing the work of the construction of the roadbed, until about September 1, 1903, and were thereby seriously delayed for more than three months in the completion of said work.

And plaintiffs show that by reason of the said causes of delay stated above in paragraphs (a) and (b) they were entitled to fully eight months' additional time for the completion of the contract.

Second. Plaintiffs further show that it is not true, as alleged in the answer herein, that plaintiffs would not have been able to do the work over the said Angola State Farm, if the right of way over the said farm and over the Ackland plantation adjoining it had been procured within the time within which the said defendant company was bound to procure the same.

Plaintiffs show that as a matter of fact the work over the said Angola State Farm was all team work, and that, after completing the work up over said Ackland plantation to the said Angola State Farm, plaintiffs had an ample and large equipment of teams and an organized body of laborers with which to have completed the work over the said Angola State Farm; and plaintiffs were anxious to go on with the work over the said farm, but were unable to do so, by reason of the failure of defendant to procure the right of way over the said Angola State Farm; and plaintiffs were forced to sell nearly the whole of their teams and team equipment because the defendant could not procure for them the right of way over said Angola State Farm.

Plaintiffs show that if said right of way over the Angola State Farm had been given them, as it should have been, by defendant, and if the right of way over the Ackland plantation had been given them promptly and as it should have been, they could and would have completed the work over both of said places within the time limit of the contract.

Third. In regard to the completion of the work to Thompson's creek, Mr. Ellerbe, the president of the defendant company, at an interview with plaintiffs in Baton Rouge in the early part of January, 1904, informed plaintiffs that no damages nor penalty, nor any forfeitures of said 10 per cent. or of any sum, would be claimed by the defendant for the noncompletion of the work from Baton Rouge to Thompson's creek by September 1, 1903, because the defendant had been in no manner injured by the noncompletion of the said work by the date last mentioned. The plaintiffs had sublet the work from Baton Rouge to Thompson's creek to subcontractors, and such subcontractors were bound by contract to complete the various portions of the work sublet to them by or before September 1, 1903; but such subcontractors had not completed the work let to them by said last-named date, and were responsible to plaintiffs for such delay in case plaintiffs were responsible to defendant for any such delay, and such subcontractors were able to respond in damages therefor, and defendant then owed them large sums of money for such work, out of which plaintiffs could have recouped themselves. At the time of said conversation with said president in January, 1904, said defendant and its said president knew all the matters and things herein set out in regard to said subcontractors and their said contracts and the delay on their part, and that large sums were owing to said subcontractors as aforesaid, and the statements herein mentioned as made by said president were made with full knowledge on the part of said defendant and said president, that if no claim was made by defendant against plaintiffs for delay then plaintiffs intended to pay said subcontractors in full and release them. Said statements were made to induce plaintiffs to so pay and release said subcontractors. After said statements were made, and acting on the faith thereof and induced thereby, the plaintiffs did pay off said subcontractors in full, and released them from any liability to plaintiffs for any delays, and by reason of the facts above mentioned said defendant is now estopped to claim or enforce any damages, penalty, or forfeiture on account of any such delay.

Plaintiffs further show that under the contract the chief engineer of the defendant company was required to give notice to the

plaintiffs, if at any time it seemed to him that the forces employed by the plaintiffs were insufficient to complete the work within the time specified. Plaintiffs show that no such notice was given, except upon one occasion, on which the said defendant company expressed itself as much gratified by the promptness with which its notice was attended to. And plaintiffs aver that further notices were not given, because the defendant company were in point of fact satisfied with the progress of the work, and did not desire to have it completed any sooner than it was in point of fact completed, and because defendant company was unable to comply with its own obligations under the contract, in respect to putting the plaintiffs in position to complete the work on contract time.

Plaintiffs reiterate and reaver all of the averments in their original petition herein contained. In view of the premises, petitioners pray that they have leave to file this their supplemental and amended petition, and that same be duly served upon the defendants cited in the original petition, and that, after due proceedings and delay, there be judgment in all respects as prayed for in the original petition.

Petitioners further pray for all necessary orders and for general and equitable relief.

The Construction Company answered the original and supplemental petition, reaffirming the allegations of its original answer, and pleading de novo a general denial. Further answering, it alleged that on failure of the plaintiffs to complete the work contracted to be done by them they were put in default by defendant. Further answering, defendant averred, elaborating that part of the original answer claiming in the alternative $46,000, that the cost and damage and expense and loss therein specified were only a part of the damage flowing from the failure on part of plaintiffs to promptly complete their work; that instead of doing the work of construction continuously, which was the proper way to do it, so as to enable the defendant to follow the completion of the roadbed with its bridges and tracks to reach and protect the embankments and cuts as completed and delivered, the plaintiffs did the work in detached or isolated stretches, and failed through their fault to promptly complete or fill in certain parts or stretches of the line; and, even if they had the right to do the work in this detached and isolated way (which is denied), they failed through their fault to promptly fill in and complete the intervening stretches, thus exposing the work which they had done to the elements, and causing the subsequent damages and expense as specified in the original answer; but these items and claims are only urged in the alternative as stated in original answer. Specially answering clause 2 of amended petition, defendant averred it procured and delivered the Ackland right of way, and delivered same to plaintiffs in the summer or early fall of 1903; and specially answering clause 2 of amended petition, defendant averred that plaintiffs are entitled to nothing for the work on the Angola State Farm, for the reason set up in the original answer; and defendant further averred that plaintiffs, particularly Winston, acting for the plaintiffs, Winston Bros. & Co., and Craney Bros., stated their readiness and willingness to surrender, and did surrender, that part of the work.

In view of the premises, defendant prayed for leave to file this amended answer, and that plaintiffs' demand be dismissed as prayed for originally, or, in the alternative (in case of any judgment against it in favor of plaintiff for any amount), for judgment in its favor as set out in the original answer, and for general relief.

Plaintiffs filed a second supplemental petition, in which they alleged that they reiterated all of the averments of their original and supplemental petitions. They then further alleged that after the completion and accept-

ance of the work involved herein they were tendered by the defendants a further sum of $745.45 balance admitted to be due without regard to the items claimed in plaintiffs' petitions. They averred that on the estimates made on the contract, and irrespectively of the issues raised herein, they are entitled to this sum.

In view of the premises, they prayed that this their second supplemental and amended petition be filed; that they have judgment as originally prayed for in the said petition, and also in the further sum of $745.45, with legal interest from the 1st of December, 1904, and for costs and all general relief.

Plaintiffs filed a third supplemental and amended petition, in which they reiterated their prior allegations and averred that at the time of the making of the contract herein it was agreed between the parties thereto that "at depot sites, sidings, and other places" the contractor might be required to haul borrowed material from such points as the engineer in charge might direct, and it was agreed that in such event the contractor should be allowed a charge of 1 cent per 100 yards for each cubic yard of earth hauled a greater distance than 200 feet.

Now petitioners aver that the chief engineer of defendants wrote this agreement into said contract, but that his stenographer in error left in the contract the clause, "at depot sites sidings at other places"; that this was a clerical error, and remained for several months without the knowledge of the parties, who acted upon the true contract as made; that said chief engineer instructed all of his subordinates to keep record of this overhaul and to allow the same.

Petitioners aver that during the performance of said contract, and within the said terms thereof, they hauled 102,707 cubic yards the distance specified in the annexed statement marked "D—I," and for which under said contract they earned and were entitled to receive the sum of $112,939.59,

and they annex hereto said statement "D—I," and make the same a part of this petition.

In view of the premises, petitioners pray that this their supplemental petition be filed, that all of said defendants be cited, and that, after due proceedings had, they have judgment in their favor against said Louisiana Central Construction Company and said William Edenborn in solido in the full sum as originally prayed for and as asked in their supplemental petition, and also in the further sum of $112,935.59, with legal interest from November 1, 1904, and for costs and all general relief.

Plaintiffs filed a fourth supplemental and amended petition, in which they alleged that in their third supplemental petition in error the clerk of defendant's chief engineer had left in the contract herein sued upon the clause referring to overhaul, so that it reads as though the parties had limited the overhaul to depot sites and sidings, and that petitioners failed in the third supplemental petition to amplify said allegation, which they now desire to do, so as to explicitly set out the manner of said clerical omission. They therefore aver that in the original draft of that part of the contract defendant's engineer wrote out the clause as understood and agreed to by the parties, to wit:

"In case engineer shall direct change of haul and as in preceding paragraph."

And the said engineer's stenographer, in copying the said writing, in error omitted the word "and." Petitioners reiterated all of the averments of their former petitions. In view of the premises, they prayed for leave to file this supplemental petition, and prayed for judgment as in their former petitions, and for all general relief.

William Edenborn answered. He admitted that he was the guarantor of the defendant Construction Company, and adopted all of the answer and allegations and prayers of the defendant. He prayed that plaintiffs' demands be rejected and their suit dismiss-

ed. In the alternative, he prayed for such other relief as had been previously prayed for by defendant, and for general relief.

The Construction Company, for answer to the second supplemental and amended petition filed, admitted that it owed plaintiffs the sum of $745.45, which it long before suit tendered plaintiffs, but which was refused. Further answering, respondent specially denied that there was any error in the contract as written and signed; that as to this alleged claim for overhaul, as claimed in third and fourth supplemental petitions, plaintiffs are judicially estopped by their pleadings herein. In their original claim, paragraph No. 10 alleged damage of $10,-860.67; that plaintiffs were entitled under their said contract to only 17½ cents per cubic yard for earth taken for the purpose of and placed on embankments from places other than cuts—the said claim made being for work done on sections 17, 18, and 19, being the same sections on which plaintiffs now claim overhaul. Further answering, in the alternative, if this estoppel should be overruled, respondent avers that, throughout the course of the work done under the contract, said contract as written was construed by both plaintiffs and defendant herein in a way that excluded any claim whatever as now set up for the first time in the said supplemental petitions to any alleged overhaul; that during all the partial settlements and payments of 90 per cent. of the estimates by your respondent to plaintiffs on sections 17, 18, and 19 no contention was made by the plaintiffs and no allowance was ever made by your respondent for the alleged overhaul, plaintiffs well knowing that the contract did not express or contemplate any such allowance, and by their action interpreted the same, and are now estopped from alleging any such error as charged in the confection of the contract, or from making any such claim, which said claim re-

127 LA.—2

spondent avers is an afterthought of said plaintiffs and not made in good faith.

Amending the answers herein filed relative to Angola State Farm, the building of which it let to another party than plaintiffs at 17½ cents per cubic yard, if the court should hold that building of same by plaintiffs was suspension or annulment without cause, then in the alternative defendant alleged for such suspension or annulment any claim for alleged profits on said work are excluded by the terms of the contract. Amending further the answers herein filed, defendant avers it put plaintiffs in default on their noncompletion of the work on time. Reiterating all answers heretofore filed by it, respondent prays that the demands of said plaintiffs be rejected and suit be dismissed at their costs, and in the alternative for judgments prayed for as in answers hereinbefore filed.

The district judge rendered judgment adjudging and decreeing that plaintiffs have judgment and recover of the defendant the Louisiana Central Construction Company and William Edenborn in solido the full sum of $61,223.85, plus $745.45, making in all the sum of $61,969.30, with 5 per cent. thereon from December 1, 1904, till paid, and all cost of suit. Defendants' reconventional demand is rejected.

The judge, in giving judgment, assigned the following reasons for his action:

This litigation grows out of the following facts as shown by the record:

The plaintiffs entered into a written contract with the defendant to build for said defendant 50 miles of single-track railroad bed, extending from Baton Rouge to the Mississippi river, at or near Angola State Farm, upon certain terms and conditions fully set out in said contract. It not being necessary to note all the terms of the contract, we will mention only those which may have a bearing on the issues of the case. One of the

conditions of the written contract was that "time was the essence of the contract." Another was that monthly payments would be made for all work done after deducting 10 per cent. of said amount as an agreed compensation for damages, to be forever retained by the defendant in case of failure of the plaintiffs to complete the whole amount of work embraced in the contract according to the several stipulations of the agreement, the liquidated damages to be absolute, and not subject to any deduction on account of partial performance of the contract. Another was that portion of the roadbed between Baton Rouge and Thompson's creek should be completed by September 1, 1903, and from Thompson's creek to the Mississippi river, at or near Angola, by June 1, 1904. Another was that no charges should be made by the plaintiffs for hindrances or delays of any kind; but it might entitle them to an extension of time to complete the work, provided said extension be asked for in writing by the engineer in charge immediately and prior to first estimation after the work is done, and the additional time or extension is to be determined by the chief engineer of defendant. Another was that changes of grade could be made by defendant's engineer, but that no claim for such change shall be made, unless made in writing before the work on the altered portion shall have commenced. All profits and estimates being understood as only approximate, and will not in any way govern the final estimate of work as completed. Another was that at depot sites, at sidings, at other places where it is not desirable to have spoiled banks and borrow pits, the contractor may be required to haul dirt from other points as the engineer in charge may instruct, and in such cases the plaintiffs shall be entitled to extra haul.

Another was that the decision of the chief engineer (of defendant) shall be final and conclusive on any dispute which might arise between the parties to the contract relative to or touching the same, and each party waived any right of action or remedy in law, so that the decision of said engineer shall, in the nature of an award, be final and conclusive. Bond for the faithful performance of the contract was given, and the contract signed, March 24, 1903.

The work to Thompson's creek was sublet under defendant's approval, but was not completed till January 1, 1904, some months after expiration of contract term, which was September 1, 1903. The work from Thompson's creek to Angola was not finished till December 1, 1904, which was six months after the contract time. The road was accepted December 1, 1904, but defendant refused to pay the 10 per cent. of monthly payments reserved, on the ground that the contract had not been completed on time and it had a right to this as liquidated damages. Defendant tendered plaintiffs $745.45 balance due, but refused to pay the 10 per cent. on monthly payments which it had retained. Upon this refusal plaintiffs bring this suit to recover the 10 per cent. retained, and for extra work and damages caused by defendant, and for $745.45 balance due on account. There were four supplemental petitions filed, which in substance ask for judgment for $61,223.85, as being 10 per cent. retained on whole amount of work. They allege: That this 10 per cent. was not considered under the contract as liquidated damages, but as a penalty, and that, if it was, the delay in completing the contract was caused by high water, change of grade by engineer, and by failure of defendant to stake off the work and procure necessary right of way—all of which delayed petitioners and entitled them to an extension of time of six months, which had been granted them by defendant's chief engineer. That in addition to this the president and general

manager of the defendant company had told plaintiffs they would not be held to time limit.

Second. That on account of the change of grade from the original profiles and specifications they had been damaged in the sum of $10,860.67.

Third. That on account of taking from them the work done over the Angola State Farm and letting it out to others plaintiffs had been damaged and lost in profits on said work $10,500.

Fourth. They allege: That in drawing up the contract it was agreed and understood that that portion of said contract referred to in section 23, where it refers to such place where it may be required to haul dirt, etc., should read as follows: "Depot sites, sidings, and other places," whereas it reads, "At depot sites, sidings, and other places." That this was an error of stenographer in typewriting same, and which would entitle plaintiffs to overhaul sued for, etc.

(1) The defendant admits the contract and the retention of the 10 per cent. on monthly payments, but claims that it is entitled to same as liquidated damages, as per contract, for failure to complete the work on time, which was solely the fault and negligence of plaintiffs. Defendant denies the extension of time to complete contract, and, if granted by Hawley, the chief engineer, it was done after default as to timely completion and without authority to do, not being at that time in charge as such chief engineer.

(2) That whatever change was made in grade did not injure plaintiff, as the embankment to be built from the dirt taken from the grade changed was reduced proportionally, and thereby helped plaintiffs to complete the work sooner than they would without the change. And, further, that under the contract defendant had a right to change the grade, and no claim on part of plaintiffs for said change should be allowed, unless claimed in writing before the work is commenced on said changed grade. That for this reason, and because plaintiffs had made monthly settlement with defendant for more than 12 months, and had never demanded anything on said change, they are now estopped at this late day to make said claim.

(3) That on account of plaintiffs' failure to complete the other work already begun on time, defendant after the expiration of the time limit let out the work across Angola Farm at the same price to another, and denied that any profit could have been made or plaintiffs were injured thereby.

(4) Further answering, defendant alleges that the failure to complete the work on time has damaged defendant in the sum of $40,000, expense incurred to repair the embankments which had deteriorated and washed away before defendant could get to them to lay its track. Defendant therefore prays for dismissal of plaintiffs' demands, but, in the alternative, if the court should hold that any part of the 10 per cent. fund should be returned to plaintiffs, then from said amount should be deducted the damages suffered by defendant through fault and delays of plaintiffs.

The case was tried on these issues, and quite a lot of evidence was adduced. The evidence shows that the work was to be completed to Thompson's creek by September 1, 1903, but that same was not completed until January 1, 1904. It also shows that the work from Thompson's creek to the Mississippi river at or near Angola was to be finished by June 1, 1904, but that it was not finished until December 1, 1904. Clause 2 of the contract makes "time" the essence of the contract. Clause 9 says that 10 per cent. of the monthly payment shall be retained by defendant as an agreed compensation for damages, to be forever retained by defendant in case plaintiffs failed to complete the whole

amount of work embraced in the contract according to the several stipulations of the agreement. This being true, defendant would have a right to retain this 10 per cent. unless the plaintiffs are relieved by the fault of the defendant, or unless the time was legally extended.

Let us see by whose fault the delay was caused. While much evidence is introduced to show high water, failure to stake off the work, changes of grade, and failure to procure right of way, we do not think it necessary, under our conception of the evidence, to go into the details along that line, especially when we read the letter of plaintiffs to the defendant's chief engineer, of date March 18, 1904, in which they admitted they could have put force enough on the work to have completed the same on time, and would have done so if not for the statement of Mr. Ellerbe, president and general manager of defendant company, that he would not hold them responsible on their failure to complete same on time. Eliminating the questions as to whether or not, under the facts and contract, plaintiffs were entitled to an extension of time, let us see if that extension was granted, and if the grant was binding on defendant.

The testimony of Mr. Winston and Mr. Lee shows that in January, 1904, soon after the completion of the road to Thompson's creek they had a talk with Mr. Ellerbe, president and general manager (Mr. McIlvried having died), in which they asked him if his company was going to hold them responsible for failure to complete the work to Thompson's creek on time; that, if so, they had not yet settled with their subcontractors, who were likewise bound to plaintiffs, on same basis as plaintiffs to defendant, to complete the work by September 1, 1903, and that plaintiff wanted to know, so as to hold their subcontractors for the forfeit; that in that conversation Ellerbe told plaintiff that his company would not hold them to the forfeiture on their failure to complete on time, as defendant company had not been damaged thereby. This was in a conversation in which Ellerbe was seeking from plaintiff a release of the Angola Farm work, on the ground that plaintiffs could not finish it. in time. Mr. Hawley, defendant's chief engineer, also testified that he was present at this conversation in January, 1904, and heard Ellerbe tell plaintiff to go on and settle with subcontractors, as he would not hold plaintiffs responsible on their failure to complete the Thompson creek work on time. It is true Mr. Ellerbe denied this; but his denial was rather weak, and we are satisfied from the testimony of Winston, Lee, and Hawley, as letters written at a time unsuspicious that such a conversation was had, and that plaintiff settled with their subcontractors believing they were fully released from any damages or forfeiture on this point.

The next question then is: Did plaintiff forfeit the 10 per cent. on failure to complete the other work by June 1, 1904? The evidence shows that plaintiff wrote Chief Engineer Hawley, of defendant company, on March 18, 1904, setting forth his reasons for an extension of time, and asked for the same (see evidence, page 13), and on March 24, 1904, Hawley answered plaintiffs' letter of the 18th, asking for extension, saying he thought plaintiffs entitled to an extension of time to complete contract, and hoped that same would be arranged. It seems that no definite time for extension had been agreed upon, and on October 28, 1904, plaintiffs again wrote chief engineer if he would grant the extension, and, if so, how much time would be allowed. (Page 150.) On November 3d Hawley answered saying that plaintiffs were entitled to an extension of time, and fixed the time at December 1, 1904. (See letter, page 16.)

Thus we see that Hawley, chief engineer,

did grant plaintiffs an extension till December 1st, at which time the work was completed. But defendant contends that under the contract the application was not timely made, having come after the expiration of the time. This might have been a good ground for refusing to grant the extension; but we think defendant waived this objection when he granted the extension, and cannot now say that plaintiffs had no right to the extension. Having granted the extension, he certainly is estopped from pleading good cause for refusing it. Besides, it had been asked for before time expired, and the right to same duly acknowledged. Article 13 of contract specially declares that the decision of chief engineer shall be final and conclusive on any dispute that may arise, and both parties bound themselves to abide thereby.

But defendant further contends that Hawley was not at that time chief engineer, but had left the employ of the company and was in Kansas City, and therefore his extension was null and void. While the evidence shows that Hawley was out of the state quite a great deal after July, 1904, yet he still acted as chief engineer, and at various times inspected the work. As late as November 3, 1904, we find a letter to plaintiffs in which he notified them that he had inspected the work and accepted the same. (See page 36.)

On November 25, 1904, J. A. Swigart, general manager, notified him that his resignation had been accepted. It is true it had been tendered on July 20th, but he was permitted to go on and act as such till November 25, 1904, paying him only for such time as he was serving. He was still employed and recognized by defendant as such, and, although it may appear he did not put in regular time, still he must be held as chief engineer as long as he is held out as such to the world, and especially to plaintiffs. If he has been untrue to defendant, defendant must suffer the loss, where no fraud is alleged or shown. Hence we are satisfied that whatever right defendant had to retain the 10 per cent. has been waived by it, or it must return same.

The next item asked for by plaintiffs is $10,860.67 for damages caused by change of grade at Como cut. We have examined all the evidence, and fail to see how plaintiffs can demand this. Section 5 of contract allowed defendant to make changes, and provided for extra claim of plaintiffs in such cases, provided the change was of such extent as to entail a loss on part of plaintiffs; but such a claim must be made in writing to defendant before commencing work on the changed grade. Not only was this written demand not made before the work began, but was never made directly in any of their monthly estimates of work, although plaintiffs must have known of such extra expense at the time. Not having made written complaint at the time, and not having demanded extra work or loss in monthly statements, we think plaintiffs are estopped now in such a claim. Besides, we do not think the evidence would justify the claim anyway. As to the error in section 23 complained of, we are not satisfied that any error was made, especially when we note that this article in contract was written, and not typewritten. Contracts in writing must be held to govern, unless error is alleged and clearly shown; otherwise, there would be no use to reduce same to writing.

We come now to the claim of $10,500 for loss of profit on the work done on Angola Farm which defendant sublet to another without consent of plaintiffs. We are not inclined to allow this claim for these reasons:

(1) First there is no definite evidence that plaintiffs could have done the work on time, as it was shown they never completed the other work until about December 1st.

(2) It is not clearly shown that plaintiff

could have sublet for less than 17½ cents. It is true Mr. Winston said in his depositions:

"The work across State Farm in my judgment was the best on the entire line, and we could undoubtedly have let this work to a subcontractor at 14½ cents per cubic yard. Had we done so, our price being 17½ cents, we would have made a profit of 3 cents per cubic yard."

The evidence fails to show that any one offered to do the work for less than 17½ cents, and this was what it cost defendant with convict labor to do it.

(3) Besides, in a letter from Winston on July 16, 1903, he said he and Craney were willing to release Angola work, and he thought Lee would when he saw him.

The work was not begun on Angola by defendant until long after June 1, 1904, and before any definite extension was granted. From all the evidence we think the extension on the other work was granted on the tacit, if not positive, understanding that plaintiff would release the Angola work. Be that as it may, no positive loss having been shown, we think plaintiffs cannot recover.

Having reached the conclusion that plaintiffs can only recover the 10 per cent. retained out of the monthly settlements, we next take up the reconventional demand of defendant for damages, to wit, $40,000 for repair work in restoring the roadbed, which had been damaged by the delays of plaintiffs, and $6,600 for loss of tax exemption on five miles of road, which could not be put in operation on account of delays of plaintiffs.

Having reached the conclusion that an extension of time had been granted, and the evidence showing that the work was completed and accepted within said extension, it is clear that defendant has no claim for these two items. The work was inspected and accepted, and whatever damages to same was caused by the rain, etc., either before or after the inspection and acceptance. If before, they are estopped without alleging error or fraud. If after, plaintiffs are not responsible. The item of $745.45, balance due on settlement, is not disputed.

For these reasons, it is ordered, adjudged, and decreed that plaintiffs, Winston Bros. & Co., S. M. Lee, and E. C. & J. W. Craney, do have and recover of the defendant the Louisiana Central Construction Co. and William Edenborn in solido in the full sum of $61,223.85, plus $745.45, making in all the sum of $61,969.30, with 5 per cent. thereon from December 1, 1904, till paid, and all cost of suit. Defendant's reconventional demand is rejected.

We are of the opinion that the judgment appealed from is correct, and it is hereby affirmed.